Timothy LEWIS and Timothy
Trapuzzano, Plaintiffs,

v.

FORD MOTOR COMPANY, Washing-
ton Ford, Inc., and Morelli Hos-
kins Ford, Inc., Defendants.

CA No. 09–164.

United States District Court,
W.D. Pennsylvania.

Jan. 5, 2010.

Supplemental Opinion Jan. 26, 2010.

Aldo Bolliger, Mitchell & Bolliger, PLLC, Tampa, FL, Kurt Mitchell, Mitchell & Bolliger PLLC, Kittanning, PA, for Plaintiffs.

Jaret J. Fuente, Carlton Fields, P.A., Tampa, FL, John M. Thomas, Bryan Cave LLP, Chicago, IL, Nancy R. Winschel, Dickie, McCamey & Chilcote, Pittsburgh, PA, Thomas J. Palazzolo, Bryan Cave LLP, St. Louis, MO, for Defendants.

### *MEMORANDUM ORDER*

WILLIAM L. STANDISH, District Judge.

Pending before the Court is Plaintiffs' renewed motion to remand this matter to the Court of Common Pleas for Armstrong County, pursuant to 28 U.S.C. § 1447[1] (Doc. No. 74.) Plaintiffs contend the Court no longer has jurisdiction over this case inasmuch as the motion for class certification has been denied. Defendant Ford Motor Company opposes the motion; Defendants Washington Ford, Inc., and Morelli Hoskins Ford, Inc., have not filed briefs opposing or acquiescing to the motion. For the reasons discussed below, Plaintiffs' motion is denied.

## I. RELEVANT HISTORY

Plaintiffs Timothy Lewis and Timothy Trapuzzano originally filed suit in the Court of Common Pleas of Armstrong County, Pennsylvania, on January 20, 2009. Their Complaint sought certification of a class consisting of

> all persons who purchased a Class Vehicle[2] in the State [sic] of Pennsylvania, or who owned a Class Vehicle and were forced to sell or trade the vehicle at a loss because of the extreme front end oscillation the vehicles exhibit when contacting typical road surfaces of expansion joints, road reflectors or potholes.

---

1. In relevant part, 28 U.S.C. § 1447, which addresses procedures applicable to cases removed from state to federal court, provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

2. Throughout the Complaint and in Plaintiffs' pleadings, "Class Vehicle" was defined in a number of inconsistent ways. In considering the motion to certify the class, the Court used the definition "2005–2007 F–250/F–350 Super Duty vehicles [purchased] new from Ford Motor Company authorized dealers located in the State of Pennsylvania." (Memorandum Opinion, 263 F.R.D. at 258.) The same definition is used herein.

(*See* Doc. No. 1, Exhibit A, Complaint, ¶ 14, "Class Members.")

In their initial complaint, Plaintiffs alleged that Ford Motor Company ("Ford") had violated the express warranty provisions of the Magnuson–Moss Warranty Improvement Act, 15 U.S.C. § 2301 ("the Act"); the implied warranty provisions of the Act; and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.* ("Consumer Protection Law.")

On February 2, 2009, Ford filed a timely motion for removal pursuant to 28 U.S.C. §§ 1332(d) and 1446, arguing that removal was appropriate under the Class Action Fairness Act of 2005 ("CAFA," found in various provisions of 28 U.S.C. § 1332), based on Ford's estimation that the putative class, as described in the Complaint, would consist of 100 or more members; that the damages sought for the class would exceed $5 million; and that there was complete diversity of at least one member of the class and any defendant.

Plaintiffs responded on February 14, 2009, with a motion to remand to the Court of Common Pleas. In a memorandum opinion entered on March 26, 2009, this Court determined that based on the average amount sought by a typical class member,[3] even when interest and costs were excluded (*see* 28 U.S.C. § 1332(d)(6)), damages per member would total $1,300. 610 F.Supp.2d 476, 484–86 (W.D.Pa.2009). An unrefuted declaration provided by a Ford design analysis engineer which stated that the company had sold approximately 22,000 Class Vehicles in Pennsylvania, coupled with Plaintiffs' definition of the class as "all persons who purchased a class vehicle in the State of Pennsylvania ...," led the Court to conclude that it was not rash speculation to find that the class would total at least 3,847 persons, thereby satisfying one prong of the test used to determine if removal under CAFA was appropriate. By simple multiplication, then, the amount in controversy was also satisfied. (*Id.* at 486–88.) The Court held it was appropriate to retain jurisdiction and the motion to remand was denied.

The litigation continued through preliminary discovery on class certification issues until May 11, 2009, when Plaintiffs moved to certify a class only as to Count III of the Complaint, violation of the Pennsylvania Consumer Protection Law.[4] (Doc. No. 31.) The Court denied the motion for class certification in a memorandum opinion dated August 25, 2009, 263 F.R.D. 252 (W.D.Pa.2009) (Doc. No. 59, "Non–Certification Opinion.") We concluded that although the putative class satisfied the requirements of numerosity (*id.* at 258–59) and typicality (*id.* at 264–65), Plaintiffs had failed to show that the class met the commonality and adequacy of representation criteria (*id.* at 259–64 and 265–68, respectively) of Fed. R. Civil P. 23(a), nor did the putative class satisfy the predominance criterion of Rule 23(b)(3) (*id.* at 267–68.) Plaintiffs were directed to file an amended complaint deleting all class allegations which they did on October 21, 2009.[5] They

---

**3.** Damages included the cost of vehicle repairs, incidental or consequential damages, restitution, disgorgement of "all ill-gotten revenues and/or profits," attorneys fees, costs, pre- and post-judgment interest, and, pursuant to the Consumer Protection Law, treble actual damages, costs, interest and attorneys fees. (610 F.Supp.2d at 484.)

**4.** Plaintiffs did not file a motion to certify a class as to the claims brought under the Magnuson–Moss Act at any time. However, neither did they file a motion for reconsideration of the Court's Order directing them to eliminate all class allegations, even those which did not pertain to the Consumer Protection Law claims.

**5.** Plaintiffs actually filed a first amended com-

then filed the now-pending motion to remand this matter to state court.

## II. ANALYSIS

Plaintiffs first argue that the Court's conclusion in the Non–Certification Opinion that "damages to the class where [sic] not ascertainable on a class basis and would require an 'unconscionable use of the Court's time'" is evidence that the $5,000,000 amount in controversy under CAFA "was not and could not be established thus, this Court never had subject matter jurisdiction," Consequently, we should remand the case to the Court of Common Pleas. (Plaintiffs' Memorandum of Law in Support of Their Renewed Motion to Remand, Doc. No. 75, "Plfs.' Memo.," at 2–3.)

Alternatively, the case should be remanded "because continued jurisdiction under the CAFA is premised upon the district court entering an order certifying the class action." (Plfs.' Memo at 3–4, citing cases in n. 6.) While acknowledging that there is a split among the district courts which have considered this question, the only Circuit Court case Plaintiffs were able to identify which "squarely ad-

dresses" the issue, *County of Nassau v. Hotels.com, LP*, 577 F.3d 89 (2d Cir.2009), held that class certification is required for continued jurisdiction under CAFA. Moreover, the reasoning of those courts which have held that jurisdiction survives dismissal of the class allegations is at odds with the purpose of CAFA.

Finally, Plaintiffs argue that retaining jurisdiction after denying a motion for class certification will lead to forum shopping and ensure that federal courts become bogged down with small cases which are inappropriate in federal court. Consequently, this Court should follow the line of cases based on *Falcon v. Philips Elecs. N. Am. Corp.*, 489 F.Supp.2d 367 (S.D.N.Y.2007), and hold that failure to certify a class destroys subject matter jurisdiction. (*Id.* at 4–5.) Plaintiffs fail to elaborate on this third argument and the only case cited in support of this argument, *Falcon*, does not address either the issue of forum shopping or of federal courts becoming bogged down in small cases. We therefore decline to address this point[6] and turn to an analysis of Plaintiffs' other arguments.

---

plaint on September 23, 2009 (Doc. No. 70), in which they named Springfield Ford, Inc., as a defendant. Apparently realizing that Mr. Lewis purchased his vehicle from Morelli Hoskins Ford and therefore the latter should have been named instead, they filed a Second Amended Complaint on October 21, 2009 (Doc. No. 77.)

**6.** Case law seems to support an argument diametrically opposed to that proposed by Plaintiffs, who imply that Ford engaged in forum shopping by removing the case to federal court from state court. In fact, courts are concerned that plaintiffs may engage in forum shopping by withdrawing their class claims or reducing the amount in controversy in order to manufacture a remand to state court. *See Avritt v. Reliastar Life Ins. Co.*, CA No. 07–1817, 2009 WL 1703224, *2, 2009 U.S. Dist. LEXIS 51524, *4–*5 (D. Minn. June

19, 2009), *citing Garcia v. Boyar & Miller, P.C.*, Nos. 06–1936 (consolidated), 2007 WL 1556961, *5, 2007 U.S. Dist. LEXIS 39072, *17–*18 (N.D.Tex. May 30, 2007), and *Genenbacher v. CenturyTel Fiber Co. II, LLC*, 500 F.Supp.2d 1014, 1017, n. 3 (C.D.Ill.2007); *see also Irish v. Burlington N. Santa Fe Ry. Co.*, CA No. 08–469, 2009 WL 1308429, *3–*4, 2009 U.S. Dist. LEXIS 39844, *10 (W.D.Wis. May 7, 2009), acknowledging that "CAFA is intended to reduce forum shopping by class action litigants," and *Grimsdale v. Kash N' Karry Food Stores, Inc.*, 564 F.3d 75, 80–81 (1st Cir.2009), noting that when enacting CAFA, one of the goals expressed by Congress was to expand federal class action jurisdiction in an effort to reduce "abusive practices by plaintiffs and their attorneys," including "forum shopping to take advantage of potential state court biases against foreign defendants."

### A. *This Court Never Had Jurisdiction under CAFA*

■ Plaintiffs argue that subject matter jurisdiction in this case never existed and remand is thus mandatory under 28 U.S.C. § 1447(c). They contend that in assuming jurisdiction under CAFA, the only basis for Defendant's removal action, the Court erroneously determined that the damages of the class would satisfy the $5 million threshold based on a general calculation, yet later determined that the commonality criterion of Rule 23(a) could not be satisfied because each class member's damages would have to be individually determined. Similarly, the Court granted CAFA jurisdiction based on a class size of at least 3,847 members, only to later contradict itself in the Non–Certification Opinion by finding that these class members had "disappeared like specters in the night" or that the numerosity criterion had been "established only by the slimmest of margins," According to Plaintiffs, it follows that if the class did not satisfy the numerosity[7] or commonality[8] criteria of Rule 23(b) at the time the class certification motion was denied, the same must have been true at the time of removal, meaning that the Court did not have jurisdiction when the case was removed. Consequently, the Court must remand to state court for lack of subject matter jurisdiction. (Plfs.' Memo at 5–7.)

■ This argument reflects a fundamental misunderstanding of the law. CAFA gives federal district courts original jurisdiction, either by the plaintiff's act of filing in such a court or by the defendant's removal thereto, of a putative class action *before* the entry of a class certification order, assuming the criteria of 28 U.S.C. § 1332(d)(2) and (d)(5)(B) are met. *See* 28

---

7. In a rather confusing argument, Plaintiffs contend that the case should be remanded to state court because the rulings of this court are inconsistent. (Plfs.' Memo at 7, stating that the Court's purportedly inconsistent rulings mean that "jurisdiction according to CAFA never existed and the matter must be remanded.") With regard to the numerosity issue, the Court held in the opinion addressing the initial motion to remand that there were more likely than not at least 100 members of the class and in the Non–Certification Opinion that Plaintiffs had satisfied the numerosity requirement of Rule 23(a) by the preponderance of the evidence, (Non–Certification Opinion, 263 F.R.D. at 259.) The Court arrived at no determination of a likely number of class members in its Non–Certification Opinion, but accepted Plaintiffs' argument, based on warranty records they put into evidence, that there were "at least 1,000 and perhaps as many as 21,836 individuals" who were potential members of the class, (Brief in Support of Motion for Class Certification, Doc. No. 32, at 11.) The Court could hardly have held, then, that the class members had disappeared "like specters in the night."

8. The Court held in the initial remand opinion that if Plaintiffs were to succeed on all their claims, each member of the class—based on the damages alleged in the Complaint and on case law concerning award of attorneys fees (*see Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir.2007))—would be entitled to damages of at least $1,300, thus satisfying the CAFA amount in controversy, assuming there were at least 3,847 class members. (610 F.Supp.2d at 484–87.) The analysis in the Non–Certification Opinion did not address the *amount* of damages each class member could potentially receive, but rather *how* each plaintiff's damages would be ascertained, a question which would involve individual review of each class member's circumstances in direct contradiction to Third Circuit's opinion that "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." (Non–Certification Opinion, 263 F.R.D. at 263–64, *quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d, 154, 172 (3d Cir.2001).) In short, the opinions are not inconsistent but rather deal with different questions—the CAFA requirements for numbers of class members and amount of damages as compared to the numerosity and commonality requirements of Rule 23(a).

U.S.C. § 1332(d)(1)(B), defining "class action" as "any civil action *filed under* rule 23 of the Federal Rules of Civil Procedure or similar State statute [9] or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." (Emphasis added by the Court.) "A complaint that contains class-type allegations historically has been assumed to assert a class action before formal class certification." *College of Dental Surgs. of P.R. v. Conn. Gen. Life Ins. Co.,* 585 F.3d 33, 40 (1st Cir.2009). CAFA further provides that "[t]his subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that claim." 28 U.S.C. § 1332(d)(8). "[T]his provision . . . effectively treats as provisional class actions those suits visibly framed as such, notwithstanding flaws that may be subject to adjustment or revision before a class can be certified." *College of Dental Surgeons, id.*

Based on Plaintiffs' allegations in the Complaint that the criteria for class certification had been met and the outline of damages they sought on behalf of the class, plus the affidavit stating the cost of repairing the allegedly defective vehicles and the number of Class Vehicles sold, Ford had reasonable grounds to seek removal to this Court. "CAFA does not list class certification as a prerequisite to federal jurisdiction. Indeed, at the time a CAFA action is brought in federal court, class certification will almost always remain to be decided at some unspecified future date." *Falcon,* 489 F.Supp.2d at 368; *see also In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.,* MDL Doc. No. 1718, 2007 WL 2421480, *2, 2007 U.S. Dist. LEXIS 62483, *5 (E.D.Mich. Aug. 24, 2007) (finding that under CAFA, "the Court's jurisdiction over this matter is proper, regardless of whether a class has been certified.")

■ In short, CAFA provides jurisdiction in federal court before the court considers class certification issues based solely on the allegations of the plaintiff and, in the case of removal, the evidence put forth by the defendant to show that the basic criteria of CAFA are met. The Court determined that jurisdiction was appropriate here at the time of removal as discussed at length in the Memorandum Opinion of March 26, 2009 (Doc. No. 18.) We are not, therefore, persuaded by Plaintiffs' argument that this Court did not have jurisdiction at the time of removal.

### B. *The Court Lost Jurisdiction When It Denied the Motion for Class Certification*

■ Plaintiffs' second argument is more cogent. As they point out, district courts which have considered whether the court continues to have jurisdiction under CAFA *after* it denies the motion for class certification are divided in their conclusions. Plaintiffs urge that we follow those courts who have held that once a court has dismissed (or the plaintiff has withdrawn) the class allegations, the case must either be remanded to the state court from which it was removed or dismissed without prejudice where the plaintiff initially filed in federal court. (Plfs.' Memo at 3–4.)

The problem of whether the federal court continues to have jurisdiction after class certification has been denied arises in

---

9. In their Complaint, Plaintiffs did not invoke Federal Rule of Civil Procedure 23, but rather Pennsylvania Rules of Civil Procedure 1701–1716, which incorporate criteria essentially identical to those of Federal Rule 23(a).

(Complaint, ¶¶ 13–25.) However, their motion for class certification was filed pursuant to Federal Rule 23(a) and (b)(3) (Doc. No. 31.)

part because the statute itself is silent on this question. As noted above, the language of the act refers to jurisdiction "before or after the entry of a class certification order by the court with respect to that claim." 28 U.S.C. § 1332(d)(8). This has led some courts to conclude that Congress intended that once jurisdiction was established under CAFA, the federal court continued to have jurisdiction even after all class action claims had been eliminated from the suit. This is consistent with the generally held rule that jurisdiction is determined at the time of removal and post-removal amendments to the complaint do not usually divest the court of jurisdiction. *See Allen–Wright v. Allstate Ins. Co.,* CA No. 07–4087, 2009 WL 1285522, 2009 U.S. Dist. LEXIS 39555 (E.D.Pa. May 7, 2009) and cases cited in footnote 5 thereof. These decisions sometimes also rely on the fact that although class certification may be denied at one point in the litigation, the question may be revisited with a different result after more discovery is completed. *See, e.g., Genenbacher v. CenturyTel Fiber Co. II, LLC,* 500 F.Supp.2d 1014, 1017 (C.D.Ill.2007).

Conversely, the courts finding that jurisdiction does not continue after class certification is denied rely on equally well established principles that federal courts are courts of limited jurisdiction, that doubts about continuing subject matter jurisdiction in a case removed from state court should be resolved in favor of remand, and other language in the statute which implies that jurisdiction after the entry of a "class certification order" depends on that order being one which "approv[es] the treatment of some or all aspects of a civil action as a class action." 28 U.S.C. § 1332(d)(1)(C). *See Avritt v. Reliastar Life Ins, Co.,* CA No. 07–1817, 2009 WL 1703224, *2, 2009 U.S. Dist. LEXIS 51524, *5–*7 (D.Minn. June 18, 2009), citing cases.

Unfortunately for district courts addressing this question, no Court of Appeals—including the U.S. Court of Appeals for the Third Circuit—has explicitly attempted to resolve this question. Plaintiffs claim that the only Circuit Court case which "squarely addresses" this issue is *County of Nassau v. Hotels.com, LP,* 577 F.3d 89 (2d Cir.2009). They summarize *County of Nassau* as follows:

> In *Nassau,* the Plaintiff brought a punitive [sic] class action in federal court basing jurisdiction upon the CAFA. The district court then dismissed the action because it found the plaintiff had failed to exhaust administrative remedies; the plaintiff then appealed. The Second Circuit raised the issue of whether the requirements of Fed.R.Civ.P. 23 was [sic] actually satisfied *nostra sponte.* The court raised the issue because it found that jurisdiction premised upon the CAFA required an order certifying the action for class treatment. Since the issue of class certification was not resolved, the court remanded the action to the district court for this issue to be resolved.

(Plfs.' Memo at 10–11.)

Our review of *County of Nassau* leads us to believe Plaintiffs have slightly misread that case in concluding that the Court of Appeals for the Second Circuit found CAFA jurisdiction "required an order certifying the action for class treatment." In that case, the County, on behalf of all other New York state counties similarly situated, filed suit in federal court under CAFA, alleging that Hotels.com and other on-line travel services had collected county and other municipal taxes from its customers based on the amount those customers paid for hotel rooms. However, rather than remitting the full amount of those taxes to the county, the defendants paid the tax based on the amount it had paid

the hotel for the room and kept the difference. *See County of Nassau v. Hotels.com, LP*, 594 F.Supp.2d 251, 252–254 (E.D.N.Y.2007). The defendants apparently conceded that CAFA applied and moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(1), arguing, among other things, that the County had failed to exhaust its own mandatory administrative procedures for assessing and collecting local taxes. The district court granted the motion to dismiss on that basis. *Id.* at 255–258.

On appeal, the Circuit Court noted that the parties in the case had stipulated that the requirements of CAFA were met, a point the lower case had not examined carefully. *County of Nassau*, 577 F.3d at 92. The Court pointed out that each of the individual local governments in the State of New York, i.e., the potential class of plaintiffs, imposed hotel taxes according to its own tax laws. Construction of the language of those tax laws might require individual inquiry and thereby raised the possibility that questions common to the class members would not predominate over individual questions. *Id.* The Court

stated that the case would be remanded to the district court to consider this question in the first instance to determine if class certification would be appropriate, given the diversity of the tax laws and the requirements of Rule 23(b).

Contrary to Plaintiffs' interpretation of this case, the lower court had neither granted nor denied class certification, nor had it entertained a motion to remand after certification was denied. Therefore, *County of Nassau* provides no guidance to this Court on the present question of whether we continue to have jurisdiction after denying class certification.[10],[11]

Other Courts of Appeals have obliquely approached this question. In *College of Dental Surgs.*, *supra*, the First Circuit Court of Appeals returned the case to the lower court which had prematurely dismissed it because the complaint lacked a sufficient definition of the class, a decision the Court of Appeals found was "in tension" with the general provisions regarding jurisdiction before and after entry of a class action order. *Id.*, 585 F.3d at 40. While recognizing that the district courts

---

**10.** We also find the Court of Appeals' analysis in *County of Nassau* inconsistent with general CAFA case law which assumes that a court has jurisdiction based on the allegations of the complaint alone when the case is originally filed in federal court. Furthermore, asking the lower court to base its jurisdictional analysis on determination of whether the plaintiffs had adequately pled that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (Fed. R.Civ.P. 23(b)(3)) as the first step in ascertaining jurisdiction would seem to contradict the CAFA provision which states that the district court shall have jurisdiction over "any civil action filed under rule 23 of the Federal Rules of Civil Procedure" which also meets the other three criteria set forth in the statute regarding class size, amount in controversy,

and diversity. 28 U.S.C. § 1332(d)(1)(B). That is, as stated in the text above, jurisdiction under CAFA may be invoked by filing a putative class action which meets the three criteria of 28 U.S.C. § 1332(d)(2) even before the class certification issue is addressed.

**11.** Plaintiffs also indicate in their memorandum that "when this Court denied class certification it lost jurisdiction of the matter pursuant to *Nassau*." (Plfs.' Memo at 11.) To the extent Plaintiffs are arguing that this Court is bound by *Nassau*, an opinion from the Court of Appeals for the Second Circuit, that argument, of course, is in error. *See Kinder Morgan Liquids v. Borough of Carteret*, CA No. 05–4334, 2006 WL 827848, *3, 2006 U.S. Dist. Lexis 22300, *9 (D.N.J. Mar. 30, 2006) ("[T]his court is not bound by decisions issued by the First Circuit. This court is bound by Third Circuit decisions.")

were split on the question of whether a later denial of class certification would divest a district court of CAFA jurisdiction, the Court "express[ed] no opinion" on that question. *Id.* at 42, pointing out that another First Circuit court had suggested in dicta that denial of class certification would defeat CAFA jurisdiction, referring to *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 492 (1st Cir.2009).

Conversely, in *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir.Fla.2009), the defendant had removed a nationwide class action case from Florida state court; after discovery, the plaintiff amended his complaint to include a subclass of T–Mobile employees only based in Florida. The district court denied certification of the nationwide class due to problems with commonality but certified a class of certain T–Mobile employees from Florida. *Id.* at 1262–1264. T–Mobile appealed the order granting class certification. The Court of Appeals found that the lower court had erred by speculating without "a shred" of evidence that the numerosity criterion of Fed.R.Civ.P. 23(a) would be satisfied with regard to the smaller Florida class. *Id.* at 1266–1267. The Court also noted in dicta that even if it were later found that the amended class definition resulted in fewer than 100 plaintiffs, "the § 1332(d)(5)(B) limitation applies only to 'proposed' plaintiff classes (as opposed to classes actually certified or that go to trial); jurisdictional facts are assessed at the time of removal; and post-removal events (including noncertification, de-certification, or severance) do not deprive federal courts of subject matter jurisdiction." *Id.* at 1268, n. 12. The Court also referred to a statement which appeared in the legislative history of the act, noting, "Current law (that [the CAFA] does not alter) is also clear that, once a complaint is properly removed to federal court, the federal court's jurisdiction cannot be 'ousted' by later events."

*Id., citing* S.Rep. No. 109–14, 109th Cong., 1st Sess.2005, reprinted in 2005 U.S.C.C.A.N. 3, *70–71, *66–67. Although this footnote does not provide a circuit court's decision on the continuing jurisdiction question, it implies that the Eleventh Circuit Court of Appeals would align with lower courts holding that once jurisdiction is established under CAFA, it continues throughout the life of the case.

At the district court level, at least two courts have thoroughly analyzed the case law from other circuits on this subject and have arrived at opposite conclusions. In *Allen–Wright v. Allstate Ins. Co., supra,* the Court identified the cases according to their conclusions. *See* 2009 WL 1285522, *1–*2, n. 5, 2009 U.S. Dist. LEXIS 39555, *5–*9, n. 5 contrasting cases which concluded denial of class certification meant the court either never had subject matter jurisdiction or had lost jurisdiction as a result, with those cases which found once jurisdiction was established under CAFA, subsequent events, including denial of class certification, did not divest the court of jurisdiction.

The court in *Allen–Wright* concluded that "both the statutory language of CAFA and well-settled law regarding removal actions weigh in favor of retaining jurisdiction in the matter." *Id.* at *3, 2009 U.S. Dist. LEXIS 39555 at *13. Based on the "plain language of the words" of the statute, the court noted that "an action in which class certification is later denied would still be defined as a 'class action' because it was filed as such." That is, "the statute appears to recognize that not every action filed as a class action will meet the criteria set out for certification, but does not then hinge jurisdiction upon the certification of the class, but only upon the filing of a class action." *Id.* at *3, 2009 U.S. Dist. LEXIS 39555 at *14. The court also considered the same excerpt from the leg-

islative history as had been noted in *T-Mobile* above, indicating that Congress had intended that CAFA not disturb current law that once jurisdiction was established in the federal court, it could not be ousted by later events. *Id.* at *3, 2009 U.S. Dist. LEXIS 39555 at *15.

The third source of support for the *Allen–Wright* court was the decision in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), where the United States Supreme Court held that "events occurring subsequent to the removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has been attached." The Third Circuit has followed that ruling in cases such as *Westmoreland Hospital Association v. Blue Cross of Western Pennsylvania*, 605 F.2d 119, 123 (3d Cir.1979), where the court held that "the nature of the plaintiff's claim must be evaluated, and the propriety of remand decided, on the basis of the record as it stands at the time the petition for removal is filed." *Allen–Wright*, 2009 WL 1285522 at *3, 2009 U.S. Dist. LEXIS 39555 at *16–*17.

Based on these guidelines, the *Allen–Wright* court concluded that although

> denial of class certification is distinct from a change in citizenship or amount in controversy, ... with no specific provision contained in the statute, we rely on the common law to assess "developments" post-removal. We find this reasoning applicable to the instant case where a post-removal denial is a subsequent development. Jurisdiction attached to this case at its time of removal and, without specific direction from Congress, we cannot find that a change in the circumstances of the action divests this Court of jurisdiction.

*Allen–Wright*, 2009 WL 1285522 at *3, 2009 U.S. Dist. LEXIS 39444 at *18.

Having made a comparable exhaustive review of the case law, the court in *Avritt v. Reliastar Life Ins. Co., supra,* reached the exact opposite conclusion. First, the court relied on two provisions in CAFA, the first stating that the court had jurisdiction "before and after the entry of a class certification order" and the second defining "class certification order" as "an order issued by a court approving the treatment of some or all aspects of a civil action as a class action." *Avritt*, 2009 WL 1703224 at *2, 2009 U.S. Dist. LEXIS 51524 at *2–*3 *citing* 28 U.S.C. §§ 1332(d)(8) and (d)(1)(C), respectively. The court reasoned that jurisdiction could be maintained only if there were a possibility that a class could still be certified and that the certification order would provide treatment as a class action for "some or all" of the case. By contrast, if the class certification did not provide for class treatment, i.e., certification was denied, the court would be divested of jurisdiction. *Id.* at *2–*3, 2009 U.S. Dist. LEXIS 51524 at *7–*8.

This Court finds it is persuaded by the reasoning of *Allen–Wright* and, more significantly, by a reference to the legislative history of CAFA which no other court seems to have considered, but which has been brought to our attention by Ford. In the original version of S.1751, the Senate bill proposing CAFA, there had been a provision which stated:

> (7) (A) A district court shall dismiss any civil action that is subject to the jurisdiction of the court solely under this subjection if the court determines the action may not proceed as a class action based on a failure to satisfy the prerequisites of rule 23 of the Federal Rules of Civil Procedure.

(Defendant's Memorandum in Opposition to Plaintiffs' Renewed Motion to Remand,

Doc. No. 95, "Def.'s Memo.," Appendix B, at 6.)

As a general matter, a court need not consider the legislative history of a statute when the text is unambiguous and "there is no indication that Congress, for example, made a typographical error in drafting this part of the statute." *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir.2006). Paragraph (7)(A) of the draft bill addressed the precise issue before this Court and would have resolved the question by explicitly divesting the federal district court of jurisdiction if the plaintiff's motion for class certification were denied. However, as Defendant points out, when the bill reached the point of negotiation for its final form, this provision was excluded. Senator Christopher Dodd stated during floor debate that the compromise bill would eliminate the "merry-go-round problem,[12]" that is:

> S.1751 would have required federal courts to dismiss class actions if the court determined that the case did not meet Rule 23 requirements. The compromise eliminates the dismissal requirement, giving federal courts discretion to handle Rule 23–ineligible cases appropriately. Potentially meritorious suits will thus not be automatically dismissed simply because they fail to comply with the class certification requirements of Rule 23.

(Def.'s Memo., Appendix C at 2, 149 Cong. Rec. S16, 102–103, daily ed. Dec. 9, 2003.)

We are persuaded by these excerpts that deletion of the provision which would have mandated dismissal of putative class actions which fail to satisfy the requirements of Rule 23 reflects a Congressional intent to allow cases which were originally filed as class actions and met the CAFA requirements to continue in federal court even after certification is denied. As the Court of Appeals has pointed out, the task of a court "is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *United States v. One "Piper" Aztec "F" De Luxe Model 250 PA 23 Aircraft ...*, 321 F.3d 355, 359 (3d Cir.2003) (internal quotation omitted.) The deliberate deletion of the dismissal provision would seem to be a reasonably plain reflection of Congressional intent on this question. We further presume that "Congress is aware of the legal context in which it is legislating" (*Allen–Wright*, 2009 WL 1285522 at *3, 2009 U.S. Dist. LEXIS 39555 at *15–*16) and that "Congress enacts legislation with knowledge of existing law and, consequently, that [a] newly-enacted statute is harmonious with the existing law" (*McGhee v. Cont'l Tire N. Am., Inc.*, CA No. 06–6234, 2007 WL 2462624, *3, 2007 U.S. Dist. LEXIS 62869, *8 (D.N.J. Aug. 27, 2007).) The Congressional decision to exclude the provision divesting a federal court of jurisdiction after it has denied the motion for class certification is consistent with general principles that events which occur after jurisdiction has been determined do not, in most cases, divest the court of that jurisdiction. *See Westmoreland Hospital and Red Cab, supra.*

▮ While this intent appears to be reasonably clear, we do note that Congress

---

**12.** Although not clearly identified in the legislative history, it would appear that the "merry-go-round" problem refers to the potential situation in which a defendant removes a putative class action originally filed in state court to federal court under CAFA, the court denies the motion for class certification and remands to state court, the plaintiff amends his complaint to again include class allegations, the defendant removes to federal court, etc., etc.

also intended to give the federal court "discretion to handle Rule 23–ineligible cases appropriately." Making an appropriate discretionary decision requires the Court to consider the history and current status of this litigation. This case was originally filed almost a year ago and promptly removed to this Court. During that period, in addition to this renewed motion to remand and the motion for class certification, we have considered a motion to dismiss the complaint in its entirety; a motion to remand to state court; numerous motions to compel answers to interrogatories, for production, or to exclude Defendant's expert and expert report; a motion for reconsideration and for a hearing; and motions to continue various court deadlines by both parties. In short, this Court has invested considerable judicial time and effort in this matter and is exceedingly familiar with its facts and procedural posture. While we are confident in the ability of a Pennsylvania common pleas court to bring this matter to an appropriate resolution, it appears this Court might be able to do so more expeditiously. Moreover, as Defendant points out, future procedural problems could be exacerbated if Plaintiffs attempted to appeal any of this Court's decisions, in particular the decision to deny class certification, after the matter was remanded to state court. *See Allen–Wright*, 2009 WL 1285522 at *4, 2009 U.S. Dist. LEXIS 39555 at *19–*20 ("The potential procedural hurdles of appealing a certification upon a final judgment while in state court weigh in favor of retaining the action.") We therefore exercise our discretion and deny Plaintiffs' motion to remand.

An appropriate Order follows.

### MEMORANDUM ORDER

On January 5, 2010, the Court issued a Memorandum Opinion and Order (*see* Doc. Nos. 107 and 108, "the Remand Opinion"), denying Plaintiffs' renewed motion to remand this case to the Court of Common Pleas of Armstrong County, Pennsylvania. As usual, the decision instigated a flurry of motions from the parties. First, Plaintiffs filed a motion pursuant to 28 U.S.C. § 1292(b), seeking an order of court staying the case and certifying for interlocutory appeal the Court's denial of the motion to remand. (Doc. No. 109.) Plaintiffs then filed a motion to extend time to complete discovery and respond to Defendants' pending motions for summary judgment, arguing that discovery disputes and difficulty in scheduling depositions "[made] adhering to the schedule unrealistic, unduly burdensome and inefficient" and that the Court should first decide their motion for the certificate allowing interlocutory appeal. (Doc. No. 112.) We granted Plaintiffs' motion to stay the case temporarily, pending Defendants' response to Plaintiffs' first motion and the Court's decision on that question (Doc. No. 113), but issued no order with regard to an extension of time to complete discovery. Defendants then filed a motion seeking a partial lift of the stay and reinstatement of the original summary judgment briefing schedule. (Doc. No. 114.)

For the reasons discussed below, Plaintiffs' motion at Docket No. 109 is denied, Defendants' motion is granted in part and denied in part; and that portion of Plaintiffs' earlier motion seeking an extension of time to complete discovery is, consequently, granted.

The parties are familiar with facts and procedural history of this case, thus we find no reason to reiterate that information here. *See Lewis v. Ford Motor Co.*, 610 F.Supp.2d 476, 478–480 (W.D.Pa.2009).

## I. PLAINTIFFS' MOTION FOR A CERTIFICATE OF APPEALABILITY

■ In the Remand Opinion, the Court concluded it should retain jurisdiction of

this matter based on the language of the statute itself, a comparative analysis of case law on the question from this and other circuits, and portions of the legislative history of the U.S. Senate bill enacting the Class Action Fairness Act ("CAFA.") *See Trapuzzano [Lewis] v. Ford Motor Co.*, CA No. 09–164, 685 F.Supp.2d 557, 2010 WL 27409, 2010 U.S. Dist. LEXIS 372 (W.D.Pa. Jan. 5, 2010). Plaintiffs argue that the Court's errors in that Opinion have resulted in a situation which "overwhelmingly" satisfies any one of the three bases for an immediate appeal under 28 U.S.C. § 1292(b).[1] (Plaintiffs' Memorandum of Law in Support of the Motion ..., Doc. No. 110, "Plfs.' Memo.," at 4.) First, they argue, the Court's decision that it has continuing jurisdiction under CAFA despite denial of the motion for class certification is a controlling question of law, that is, the decision is "(1) an incorrect disposition [which] would constitute reversible error if presented on final appeal or (2) the question is 'serious to the conduct of the litigation either practically or legally.'" (*Id.* at 4–5, *citing In re Chocolate Confectionary Antitrust Litig.*, 607 F.Supp.2d 701, 705 (M.D.Pa.2009), *quoting Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.1974).) The second alternative, that there be conflicting judicial opinions or a lack of binding precedent on the questions addressed in the Remand Opinion, is also satisfied, according to Plaintiffs, inasmuch as the Court specifically noted that district courts are split on the question of whether jurisdiction under CAFA continues after class certification has been denied. Moreover, there is no binding precedent from the U.S. Court of Appeals for the Third Circuit on this question while other courts of appeals are similarly split and provide little in the way of persuasive guidance. (Plfs.' Memo at 6, *citing In re Chocolate*, 607 F.Supp.2d at 706.) Finally, this situation is one in which an issue should be certified for appeal because an immediate decision by the higher court would foreclose the need for a trial or otherwise limit the issues for trial. (*Id.* at 6.)

The Court need not address the merit s of these arguments because, as Defendants point out, Plaintiffs have failed to follow the specific provisions for interlocutory appeal under CAFA. (Defendants' Memorandum in Opposition to Plaintiffs' Motion for § 1292(b) Certification, Doc. No. 116, at 4–6.)

CAFA sets out an alternative to the normal interlocutory appeal process of § 1292(b). The statute provides:

> Section 1447 [28 USCS § 1447] shall apply to any removal of a case under this section, except that notwithstanding section 1447(d) [28 USCS § 1447(d) ], a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order.

28 U.S.C. § 1453(c)(1). Review of remand orders.

[1]. The statute provides: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order. 28 U.S.C. § 1292(b).

This provision clearly describes what Plaintiffs *should* have done, that is, within ten days of the entry of this Court's order denying their renewed motion to remand, they should have applied directly to the Third Circuit Court of Appeals for review. That court would then have undertaken a two-step process: it would determine whether or not to accept the appeal and, assuming it did so, would hand down its decision within 60 days unless all parties mutually agreed to an extension of that time period. *See* 28 U.S.C. § 1453(c)(2) and (3). As noted in the title of the section and in its language, this provision *explicitly* applies to remand orders and was intended to achieve just the goal Plaintiffs seek—prompt appellate review to interpret this relatively new legislation on questions for which there is little or no established precedent. *See Morgan v. Gay,* 466 F.3d 276, 278 (3d Cir.2006) and citations therein to the legislative history of the act.

The Court entered its order denying remand on January 5, 2010. As far as we are aware, Plaintiffs failed to file the necessary petition under 28 U.S.C. § 1453(c) with the Court of Appeals in a timely manner. This Court is also unaware of any published decisions in which a court has granted a certificate of appealability pursuant to § 1292(b) with regard to a motion to remand when CAFA is applicable despite the plaintiff's failure to comply with § 1453(c).[2] Plaintiffs' motion to certify the January 5, 2010 order denying their motion to remand is therefore denied.

## II. DEFENDANTS' MOTION TO LIFT THE STAY AND REINSTATE THE SUMMARY JUDGMENT BRIEFING SCHEDULE

 Defendants argue that (1) Plaintiffs' pending motion pursuant to 28 U.S.C. § 1292(b) does not require modification of the briefing schedule established in the Order of Court entered on September 17, 2009; and (2) Plaintiffs' alleged need for an extension of time in which to conduct additional discovery is without support because they have failed to comply with the mandatory requirements of Rule 56(f). (Defendants' Brief in Support of Motion for Partial Lift of Stay and Reinstatement of Summary Judgment Briefing Schedule, "Defs.' Brief," Doc. No. 115, at 3.)

Although styled as a brief in support of their motion to lift the stay, the Court has considered Defendants' brief as one in opposition to Plaintiffs' earlier motion for an indefinite extension of time to complete discovery and respond to the motions for summary judgment. That motion was granted insofar as the Court agreed to stay discovery in this matter while the § 1292(b) motion was pending. (*See* Doc. No. 113.) Having determined that Plaintiffs failed to take the proper steps to seek review of the Court's Remand Opinion, and that Plaintiffs' § 1292(b) motion must consequently be denied, the stay is hereby lifted and the Court will consider the arguments raised in Plaintiffs' original motion.

As noted above, Plaintiffs' motion refers to the schedule ordered by the Court as "unrealistic, unduly burdensome and inefficient." (Doc. No. 112 at 1.) They further

---

**2.** This does not mean other aspects of CAFA cannot be appealed pursuant to § 1292. See, for example, *Deutsche Bank Nat'l Trust Co. v. Weickert,* 638 F.Supp.2d 826 (N.D.Ohio 2009), certifying for appeal under § 1292 the question of whether counterclaim defendants had standing to remove the case from state to federal court; and *Genenbacher v. CenturyTel Fiber Co. II, LLC,* 500 F.Supp.2d 1014 (C.D.Ill.2007), certifying the question of whether the court continued to have jurisdiction after the motion for class certification was denied.

contend that the "natural consequence" of limiting discovery to issues raised in Defendants' motions for summary "was to fuel discovery disputes and lead to unnecessary motion practice." (*Id.* at 2.) They refer specifically to two depositions now scheduled for February 4–5, 2010, and the difficulty of their counsel traveling to Michigan for those depositions in light of a trial during the week of January 25. (*Id.* at 2–3.)

In support of their argument that for the past two months, counsel for Plaintiffs has refused to schedule the depositions in question, Defendants provide a number of e-mail exchanges. (Defs.' Brief at 2.) Specifically, Defendants cite the depositions of their expert and 30(b)(6) witnesses from Ford Motor Company and Washington Ford, all of which Plaintiffs had requested. According to the e-mail correspondence (which the Court has reviewed in detail), Defendants offered numerous dates and times in January for these depositions, none of which seemed to accommodate opposing counsel's schedule. (*See* Defs.' Brief, Exhibit E, e-mail correspondence among counsel for the period October 29, 2009, through January 14, 2010.) Defendants also point out that contrary to general practice under Local Rule 56(c) which requires a response to a motion for summary judgment within 30 days after the date on which such a motion is filed, the briefing schedule issued by the Court following a status conference on December 17, 2009, allowed Plaintiffs 110 days to complete additional discovery and respond to the motions. (Defs.' Brief at 5–7.) Moreover, Defendants argue, Plaintiffs' counsel repeatedly failed to meet deadlines he had agreed to or established himself and failed to comply with the Court's instructions in the order of December 17, 2009, setting discovery and briefing deadlines. (*Id.* at 7–11.) Finally, Defendants argue that Plaintiffs have failed to satisfy Federal Rule of Civil Procedure 56(f) which requires a party opposing summary judgment who believes it has had insufficient opportunity for discovery to show "by affidavit" the "specified reasons it cannot present facts essential to justify its opposition." (*Id.* at 13–16.)

The Court has considered the arguments and evidence of the parties and concludes that despite several failures by Plaintiffs' counsel to comply with previous orders and with the provisions of Rule 56(f), each deadline in the scheduling order of December 17, 2009, will be extended by seven (7) days.[3] This extension reflects the number of business days this matter was stayed while the Court considered Plaintiffs' § 1292(b) motion through the date of the order accompanying this opinion. Although we recognize that Plaintiffs' counsel may have been committed to participating in a trial during the week of January 25, 2010, according to notes of the law clerk who attended the conference on December 17, 2009, he did not advise the Court of this commitment and we therefore find no reason to grant an additional extension on that basis.

▮▮▮ We also note from the e-mail correspondence that Plaintiffs' counsel is insisting on taking the depositions of Ford executives in Pittsburgh, Pennsylvania, rather than at Ford's corporate headquarters in Dearborn, Michigan. To forestall filing of yet more motions, we have outlined in the attached order the procedures under which the depositions of Ford's 30(b)(6) witnesses shall be taken. First, they shall take place in Dearborn, Michigan, pursuant to the general rule that in

---

**3.** Some February deadlines have been extended by an additional day due to the Court's previous failure to take into account that February 15, 2010, Presidents Day, is a federal holiday.

the absence of unusual circumstances[4] which would justify allowing the depositions to proceed at another location, depositions of corporate agents and officers should ordinarily be taken at the corporation's principal place of business. *See Luther v. Kia Motors Am., Inc.*, CA No. 08–386, 2009 WL 1727909, *3–*4, 2009 U.S. Dist. LEXIS 53494, *9–*10 (W.D. Pa. June 18, 2009), and cases cited therein. Because Plaintiffs' counsel himself proposed February 4–5, 2010, for the depositions of those witnesses, and Defendants indicated as recently as January 19, 2010, that they were still available on those dates, the depositions shall be conducted as originally scheduled, despite other modifications of the discovery/briefing schedule. The dates set forth in the order attached shall be modified only upon a joint motion of the parties or under extraordinary circumstances beyond the control of counsel.

Furthermore, counsel are advised that the Court will not consider additional requests for extension of time in which to complete discovery or respond to the motions for summary judgment unless such motions comply with all relevant Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Western District of Pennsylvania. Failure to do so may result in the Court entertaining a motion for sanctions from opposing counsel.

An appropriate order follows.

---

4. In the e-mail correspondence discussing this issue, Plaintiffs' counsel points to no "unusual circumstances" for taking the depositions in Pittsburgh but states that his "good argument" for doing so is "well-established." (Defs.' Brief, Exh. E, at 18.) The only argument actually raised pertains to the time and expense of two attorneys traveling to Michigan as compared to sending a deponent to Pittsburgh and the need to be "near the Court in case any disputes break out." (*Id.* at 23.) The Court notes that there are actually two witnesses to be deposed in Michigan, so the expense argument is in equipoise and, if necessary, the Court can resolve any deposition disputes by a telephone call from Michigan as easily as a call from Pittsburgh.